**SHELTER INSURANCE COMPANY,**
Appellant–Defendant,

v.

Angela WOOLEMS, Appellee–Plaintiff.

No. 53A01–0101–CV–28.

Court of Appeals of Indiana.

Dec. 26, 2001.

ence from Officer Ingram's decision not to testify.

Don M. Robertson, Holly M. Harvey, Bloomington, IN, Attorneys for Appellant.

William C. Lloyd, Matthew C. Boulton, Bloomington, IN, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Appellant–Defendant Shelter Insurance Company ("Shelter") appeals from the trial court's order granting Appellee–Plaintiff Angela Woolems' ("Woolems") motion for partial summary judgment.

Woolems was a passenger in a vehicle that was involved in a collision on January 10, 1997. The driver of the vehicle, Kelli Laymon ("Laymon") was insured by Shelter. Woolems suffered injuries as a result of that accident. Woolems filed a complaint against the driver of the other vehicle, Timothy Johnson ("Johnson"), alleging negligence. Johnson was insured by Atlanta Casualty. On July 22, 1999, Woolems filed a declaratory judgment action against Shelter and Bloomington Hospital. Neither Bloomington Hospital nor Johnson is a party to this appeal.

On February 25, 2000, Woolems filed a motion for partial summary judgment. In

that motion, Woolems requested that the trial court determine the following facts and issues:

(a) [t]hat the Plaintiff Angela Woolems is qualified as an insured and therefore a third party beneficiary of the subject Shelter Insurance Company policy in this cause;

(b) [t]hat Angela Woolems as an insured has rights and interests under the policy which include net under-insured motorist coverage of up to $25,000.00 for her compensatory damages that are separate and apart from her damages for that portion of her reasonable and necessary medical expenses incurred and paid over a period of time by Shelter Insurance Company[; and]

(c) [t]hat the court construe said applicable policy language and define as a matter of law the coverage, and potential dollar limit of such coverage, available to your Affiant.

(Appellant's App. 36).

The trial court held a hearing on Woolems' motion on April 17, 2000, and entered judgment on June 15, 2000, granting Woolems' motion for partial summary judgment. The trial court concluded that the underinsured motorist coverage provision was ambiguous; therefore, the trial court resolved the issue in favor of the insured, or third-party beneficiary, Woolems. Woolems and Shelter agreed that the entry of partial summary judgment should be treated as an entry of final judgment, and such was entered on December 14, 2000. Shelter appeals from this entry of final judgment.

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *LeBrun v. Conner*, 702 N.E.2d 754, 756 (Ind.Ct.App. 1998). The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact. Ind.Trial Rule 56(C); *Campbell v. Criterion Group*, 613 N.E.2d 423, 428 (Ind. Ct.App.1993), *on reh'g* 621 N.E.2d 342. Once the moving party makes a prima facie showing of the non-existence of a genuine issue of material fact, the burden shifts to the non-moving party to set forth specific facts showing the existence of a genuine issue for trial. T.R. 56(E); *Campbell*, 613 N.E.2d at 428. We must construe all designated evidence liberally in favor of the non-moving party and resolve any doubt against the moving party. *Porter v. Irvin's Interstate Brick & Block Co., Inc.*, 691 N.E.2d 1363, 1364 (Ind.Ct. App.1998).

Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Aide v. Chrysler Financial Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct.App. 1998), *trans. denied*. Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Butler v. City of Indianapolis*, 668 N.E.2d 1227, 1228 (Ind. 1996). Summary judgment may not be used as a procedural device to avoid a trial on claims that are perceived to be weak. *Yin v. Society National Bank Indiana*, 665 N.E.2d 58, 65 (Ind.Ct.App.1996), *trans. denied; Campbell v. Railroadmen's Federal Savings and Loan Association of Indianapolis*, 443 N.E.2d 81, 84 (Ind.Ct.App. 1982).

On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with the presumption of validity. *See Indiana Bd. Of Public Welfare v. Tioga Pines*, 622 N.E.2d 935, 939–940 (Ind.1993), *cert. denied*, 510 U.S.

1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994). The party appealing from an order granting a motion for summary judgment has the burden of persuading the appellate tribunal that the decision to issue the order granting summary judgment was erroneous. *See Department of Revenue v. Caylor–Nickel Clinic,* 587 N.E.2d 1311, 1313 (Ind.1992). On review, we face the same issues that were before the trial court and follow the same process. *Id.* All properly asserted facts and reasonable inferences should be resolved against the movant. *Belford v. McHale, Cook & Welch,* 648 N.E.2d 1241, 1244 (Ind.Ct.App. 1995), *trans. denied.* The appellate court may not reverse the entry of summary judgment on the ground that a genuine issue of material fact exists unless the material fact and the evidence relevant thereto were designated specifically to the trial court. Ind. Trial Rule 56(H). Furthermore, we will sustain the trial court's decision to grant a motion for summary judgment if it is sustainable by any theory or basis found in the record. *See Ward v. First Indiana Plaza Joint Venture,* 725 N.E.2d 134, 136 (Ind.Ct.App.2000).

■ Woolems incurred $35,424.66 in medical expenses relating to the medical care and services rendered as a result of the injuries she sustained in the collision. Both parties agree that Woolems received $25,000.00, which represented the policy liability limits, from Johnson's insurance carrier Atlanta Casualty. After Woolems received that amount, Johnson was dismissed from the negligence action and released from further liability. Shelter has paid to Woolems $25,000.00, the medical payment coverage limit, pursuant to the terms of its policy with Laymon. The underinsured motorist coverage limit in Shelter's policy with Laymon was $50,000.00. Shelter contends that it is no longer liable to Woolems under the terms

of the contract because she has received $50,000.00 for her damages. Woolems contends that Shelter is liable to her in the amount of $25,000.00 for her other damages, e.g., pain and suffering, and lost income, among other things.

Shelter's automobile insurance policy with Laymon contained the following provisions relating to underinsured motorist coverage:

COVERAGE E—UNINSURED MOTORISTS (INCLUDING UNDERINSURED MOTORISTS PROTECTION)

We will pay damages for **bodily injury** which an **insured** or the **insured's** legal representative is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle.** The **bodily injury** must be caused by accident and rise out of the ownership, maintenance or use of the **uninsured motor vehicle** or **underinsured motor vehicle.** . . .

\* \* \*

LIMITS OF LIABILITY

(1) The limit of liability stated in the Declarations for "each person" is the limit of **our** liability for all damages, including damages for care or loss of services or consortium, because of **bodily injury** sustained by one person as the result of any one accident. . . .

\* \* \*

(3) Any amount payable under the terms of this Coverage will be reduced by any amount paid or payable for the same damages to or for the **insured,**

(a) by or for any person or organization who is or may be held legally liable for the **bodily injury** to the **insured;**

(b) for bodily injury under the Bodily Injury Liability coverage of this policy;

(c) under any disability benefits law or similar law, except any workers' compensation law.

(d) under Medical Payments Coverage.

(Appellant's App. 57–58). (Emphasis in original).

■■■■ The interpretation of an insurance policy is primarily a question of law for the court. *American States Ins. Co. v. Adair Industries, Inc.,* 576 N.E.2d 1272, 1273 (Ind.Ct.App.1991). The provisions of an insurance contract are subject to the same rules of interpretation and construction as are other contract terms. *Id.* In construing a written insurance contract, we may not extend insurance coverage beyond that provided in the contract, nor may we rewrite the clear and unambiguous language of an insurance contract. *Id.* A contract will be found to be ambiguous only when it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning. *Id.* at 1274. An ambiguity is not established simply because a controversy exists, and one party asserts an interpretation contrary to that asserted by the opposing party. *Id.* We must accept an interpretation of the contract language that harmonizes the provisions rather than one which supports a conflicting version of the provisions. *Burkett v. American Family Ins. Group,* 737 N.E.2d 447, 452 (Ind.Ct.App. 2000). Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. *Id.* If an ambiguity exists and a dispute involves an insurer and its insured, then we must construe the language strictly against the insurer. *Id.* However, when a case involves a dispute between a third party and an insurer, we determine the general intent of the contract from a neutral stance. *Id.*

The set-off provision contained in the underinsured motorist coverage of the insurance policy is not ambiguous. The parties agree that Woolems received the policy limit of $25,000.00 from Johnson's insurance carrier, Atlanta Casualty. Shelter already paid Woolems $25,000.00 pursuant to the medical payments coverage of its policy with Laymon. The underinsured motorist coverage expressly stated that Shelter's liability for all damages including "damages for care or loss of services or consortium, because of bodily injury sustained by one person as the result of any one accident," was limited to $50,000.00 and included certain set-off clauses. Shelter was entitled to set-off the $25,000.00 Woolems received from Johnson per section (a) of the underinsured motorist limitation of liability, and was entitled to set-off the $25,000.00 Woolems received from Shelter per section (d) of the underinsured motorist limitation of liability. The policy clearly states that the limit of liability is $50,000.00. Woolems cannot receive more than that amount from Shelter under the policy.

■■■■ The trial court's decision to partially grant Woolems' motion for summary judgment is reviewed on appeal from a neutral stance because this matter involves an insurance company and a third person. To the extent that the trial court's order indicates that Woolems is entitled to an additional $25,000.00 pursuant to Shelter's policy, the trial court is in error. Shelter's underinsured motorist coverage is limited to $50,000.00. Woolems has already received $50,000.00 from Shelter and Atlanta. Furthermore, Shelter is entitled to set-off both $25,000.00 payments pursuant to the set-off clauses in the insurance policy.

The trial court's order granting the motion for partial summary judgment is in error because it appears to show that Woolems is entitled to up to an additional $25,000.00 of coverage under the uninsured motorist provision.

The trial court's order granting partial summary judgment is vacated and this matter is remanded for proceedings consistent with this opinion.

KIRSCH, J., concurs.

MATTINGLY–MAY, J., concurring with separate opinion.

MATTINGLY–MAY, J., concurring with separate opinion.

Our decision correctly found that Shelter's policy language is not ambiguous, and that Shelter is entitled to set-off its payments under the medical payments portion of the policy from any amounts due and owing Woolems under the underinsurance portion of the policy. Shelter's policy provided for $50,000.00 of underinsurance coverage. When Woolems received the $25,000.00 from Atlanta Casualty, the amount available to her under the Shelter policy was reduced to $25,000.00. As Shelter had already paid Woolems $25,000.00 under the medical payments portion of its policy, the amount then available to Woolems under the underinsurance coverage was reduced to zero. Woolems received a total of $50,000.00 from Atlanta Casualty and Shelter.

We have in a number of decisions upheld set-off provisions similar to that in the Shelter policy. In *Beam v. Wausau*, 743 N.E.2d 1188, 1192 (Ind.Ct.App.2001), Wausau was allowed to set off the amounts it paid in disability coverage to its insured. It was also entitled to set off the monies the insured had received under a worker's compensation policy. Further, in *Standard Mutual Ins. Co. v. Pleasants*, 627 N.E.2d 1327, 1330 (Ind.Ct.App.1994), we allowed Standard Mutual to set off the amounts it paid under the medical payments section of the policy from the uninsured motorist portion of that policy.

Woolems argues that allowing Shelter to set-off the amounts it paid under the medical payments section of the policy from the underinsurance benefits available to her renders the coverage illusory, as she would never be able to recover the full amount of the medical payments coverage and the underinsurance coverage. Our courts have declined on numerous occasions to find underinsurance provisions illusory, and I would decline to so hold in this case. *See, e.g., Meridian Mutual Insurance Company v. Richie*, 544 N.E.2d 488, 489 (Ind.1989); *Johnson v. AAA Chicago Motor Club Ins. Co.*, 699 N.E.2d 1182, 1185 (Ind.Ct.App.1998).

I would also decline to hold that pursuant to *Wittig v. United Servs. Auto. Assoc.*, 300 F.Supp. 679, 681 (N.D.Ind.1969), Woolems is entitled to "stack" the medical payments benefits and the underinsurance benefits. *Wittig* essentially held that a set-off provision does not prohibit an insured from recovering the limits of both her uninsured motorist coverage and her medical payments coverage *when the amount of damages the insured is entitled to recover equals or exceeds the combined limits of the medical payments and uninsured motorists coverages.*

The record before us contains as evidence of total damages only an affidavit from Woolems asserting that she had sustained "other damages" in excess of the medical payments coverage limits and that the "net under-insured motorist protection is available and reasonably due her" for that purpose. (App. at 85.) She does not allege that her damages exceed the combined limits of the medical payments and

uninsured motorists coverages. Under these circumstances, I would decline to find that a mere averment of damage is sufficient to invoke the language of *Wittig*.[1]

For the above reasons, I concur in our determination that the trial court erred in granting partial summary judgment to Woolems.

---

1. I believe the *Wittig* holding must be limited to the facts before that court. There, the language of the policy was ambiguous, and was accordingly interpreted in favor of the insured. The language of the policy provisions before us, by contrast, is not ambiguous. Further, as explained above, a number of our courts have, since *Wittig*,. determined various set-off provisions similar to those in the Shelter policy neither to be ambiguous nor to render the coverage illusory.