Bruce **ADKINS**, Appellant/Plaintiff,

v.

**VIGILANT INSURANCE COMPANY,**
Appellee/Defendant.

No. 06A01–0911–CV–530.

Court of Appeals of Indiana.

May 17, 2010.

Thomas E. Hastings, Nicholas F. Baker, The Hastings Law Firm, Indianapolis, IN, Attorneys for Appellant Bruce Adkins.

Mark D. Gerth, Kightlinger & Gray, Indianapolis, IN, Attorney for Appellee Vigilant Insurance Company.

## OPINION

BRADFORD, Judge.

Appellant/Plaintiff Bruce Adkins appeals the trial court's order granting summary judgment in favor of Appellee/Defendant Vigilant Insurance Company ("Vigilant"). On appeal, Adkins asserts that the trial court erred in granting summary judgment in favor of Vigilant. Concluding that the trial court did not err in granting summary judgment in favor of Vigilant, we affirm.

## I. FACTS AND PROCEDURAL HISTORY[1]

On February 15, 2005, Bruce Adkins was operating a 1991 Kubota tractor along West 96th Street in Boone County as part of his employment as a groundskeeper for Lisa Sutphin. Adkins was injured when the tractor that he was driving was struck from behind by a 1997 Chevrolet van operated by Kenneth Neese. As a result of the incident, Adkins sustained permanent bodily injury and incurred medical expenses alleged to be in excess of $ 100,000.

At the time of the incident, Neese was insured by State Farm Mutual Automobile Insurance Company pursuant to a policy which provided liability coverage with bodily injury limits of $100,000. Also at the time of the incident, Sutphin was insured by three separate insurance policies. The first policy was an automobile insurance policy issued by State Farm which provided underinsured motorist coverage with limits of $500,000 per person for bodily injury. The second policy was a homeowner's policy issued by CHUBB National Insurance Company which provided liability coverage with limits of $1,000,000, but no underinsured motorist coverage. The third policy, the policy at issue in the instant appeal, was an excess liability umbrella policy (the "Excess Umbrella Policy") issued by Vigilant which provided liability coverage with limits of $5,000,000 and underinsured motorist coverage with limits of $5,000,000. The Excess Umbrella Policy required the policyholder to maintain in full effect primary underlying liability insurance for the types of excess liability coverage it provided. Specifically, pursuant to the Excess Umbrella Policy, Sutphin was required to maintain "[p]ersonal liability (homeowners) for bodily injury and property damage in the minimum amount of $50,000 each occurrence," auto insurance "in the minimum amount of $250,000/$500,000 bodily injury and $25,000 property damage or $300,000 single limit each occurrence," and "[u]ninsured/underinsured motorist protection in the minimum amount of $250,000/$500,000

1. We held oral argument in this matter on April 19, 2010, and wish to commend counsel on the quality of their oral advocacy.

bodily injury and $25,000 property damage or $300,000 single limit each occurrence." Appellant's App. p. 100.

Adkins filed suit against Neese on August 31, 2006, seeking to recover compensation for the injuries which he sustained as a result of the incident. Neese was later dismissed from the instant litigation after the parties entered into a settlement whereby Neese's auto insurance provider agreed to pay Adkins the $100,000 maximum policy limits. On September 21, 2006, Adkins filed an amended complaint alleging that Neese was an underinsured motorist. Adkins's amended complaint asserted claims for underinsured motorist coverage against the providers of Sutphin's automobile, homeowner's, and excess umbrella insurance policies.

On December 12, 2006, Vigilant denied that its policy provided coverage for Adkins's claim for underinsured motorist benefits. On January 30, 2007, Sutphin's automobile insurance provider was dismissed from the case by stipulation of the parties after the trial court determined that the automobile policy did not provide coverage because the tractor was not an insured vehicle under the policy. The trial court subsequently determined that Adkins's claim for underinsured motorist benefits was not covered by Sutphin's homeowner's insurance policy because the policy did not contain uninsured motorist coverage. Neither party disputed this determination.

During the course of litigation, the parties filed multiple motions for summary judgment and motions to reconsider the trial court's previous rulings.[2] On September 28, 2008, the trial court held a hearing on the parties' motions to reconsider. On October 27, 2009, the trial court determined that the term "Required Primary Underlying Insurance" found in the Ex-

cess Umbrella Policy refers to the various types of primary insurance coverages which the named insured was required to keep in force pursuant to the Excess Umbrella Policy and that "the type and amount of the coverage depends upon the type of insurance coverage under which the plaintiff seeks to recover." Appellant's App. p. 321. The trial court noted that Adkins sought to recover under the uninsured/underinsured motorist provision of the Excess Umbrella Policy and determined that as a result, the uninsured/underinsured motorist coverage under Sutphin's automobile insurance policy was the Required Primary Insurance referred to in the Excess Umbrella Policy. The trial court entered judgment in favor of Vigilant, concluding that the Excess Umbrella Policy did not provide underinsured motorist coverage because the tractor was not a covered vehicle under the applicable Required Primary Insurance policy. Adkins now appeals.

## II. DISCUSSION AND DECISION

### A. Standard of Review

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Shelter Ins. Co. v. Woolems,* 759 N.E.2d 1151, 1153 (Ind.Ct.App.2001), *trans. denied.* Summary judgment is appropriate where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). All designated evidence must be construed liberally and any doubt resolved in favor of the non-moving party. *Woolems,* 759 N.E.2d at 1153. Summary judgment is

---

**2.** The record indicates that there are two trial judges of record because at some point, one

of the trial judges was apparently called to active duty in the United States Military.

inappropriate where material facts conflict or undisputed facts lead to conflicting material inferences. *Guzorek*, 690 N.E.2d at 667. Summary judgment may not be used as a procedural device to avoid a trial on claims that are perceived to be weak. *Id.*

 On appeal, we review a summary judgment order de novo and must determine whether the designated evidence before the trial court presents a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Bules v. Marshall County*, 920 N.E.2d 247, 250 (Ind.2010). Although the nonmoving party has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied its day in court. *McSwane v. Bloomington Hosp. and Healthcare Sys.*, 916 N.E.2d 906, 909–10 (Ind.2009) (quotation omitted); *Guzorek*, 690 N.E.2d at 667. We may not reverse the entry of summary judgment on the ground that a genuine issue of material fact exists unless the material fact and the evidence relevant thereto were designated specifically to the trial court. *Woolems*, 759 N.E.2d at 1154. Furthermore, we will sustain the trial court's decision to grant a motion for summary judgment if it is sustainable by any theory or basis found in the record. *Id.*

## B. Applicable Law

### 1. Interpretation of Insurance Policies

 It is well-established that the interpretation of an insurance policy is primarily a question of law for the court. *Liberty Mut. Ins. Co. v. Michigan Mut. Ins. Co.*, 891 N.E.2d 99, 101 (Ind.Ct.App. 2008); *Woolems*, 759 N.E.2d at 1155; *Am. States Ins. Co. v. Adair Indus. Inc.*, 576 N.E.2d 1272, 1273 (Ind.Ct.App.1991). Therefore, the interpretation of an insurance contract is a question of law which is particularly well-suited for disposition by summary judgment. *Am. Family Life Assur. Co. v. Russell*, 700 N.E.2d 1174, 1177 (Ind.Ct.App.1998), *trans. denied.*

 We review an insurance policy using the same rules of interpretation applied to other contracts, namely if the language is clear and unambiguous we will apply the plain and ordinary meaning. *Liberty Mut. Ins.*, 891 N.E.2d at 101. An insurance policy is ambiguous where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Id.* An ambiguity, however, does not exist merely because the parties favor different interpretations. *Id., see also Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind.2002); *Woolems*, 759 N.E.2d at 1155; *Adair Indus.*, 576 N.E.2d at 1274; *Auto. Underwriters, Inc. v. Hitch*, 169 Ind.App. 453, 457, 349 N.E.2d 271, 275 (1976).

 The meaning of an insurance contract can only be gleaned from a consideration of all its provisions, not from an analysis of individual words or phrases. *Farmers Ins. Exchange v. Smith*, 757 N.E.2d 145, 149 (Ind.Ct.App.2001), *trans. denied.* We must accept an interpretation of the contract language that harmonizes the provisions rather than the one which supports a conflicting version of the provisions. *Woolems*, 759 N.E.2d at 1155, *see also Tr. of Ind. Univ. v. Cohen*, 910 N.E.2d 251, 257 (Ind.Ct.App.2009); *Whitaker v. Brunner*, 814 N.E.2d 288, 294 (Ind.Ct.App. 2004), *trans. denied.* However, the power to interpret insurance contracts does not extend to changing their terms, and we will not give insurance policies an unreasonable construction to provide added coverage. *Liberty Mut. Ins.*, 891 N.E.2d at 101 (quotation omitted).

## 2. Difference Between Excess Umbrella and Primary Insurance Policies

 "A number of courts and commentators have described the differences between primary policies and umbrella policies." *Monroe Guaranty Ins. Co. v. Langreck*, 816 N.E.2d 485, 494 (Ind.Ct. App.2004).

First, an umbrella policy, in contrast to a primary policy that contains another insurance clause, has been recognized as providing unique and special coverage. Umbrella or catastrophe coverage has been defined as a needed form of coverage which picks up, above the limits of all other contracts, such as automobile and homeowners coverages, to give the security and peace of mind so necessary today where jury verdicts, or court awards, may be very substantial, to discharge the unexpected, but potentially bankrupting, judgment. The premiums charged for umbrella coverage as opposed to primary coverage generally also reflects the different function served by umbrella policies. The language of a particular policy and its description of coverage are also relevant in distinguishing between primary and umbrella policies.

*Id.* (quotations omitted). Generally, the excess insurer has assessed its risk based on an assumption that the insureds have or will procure and maintain the agreed upon primary policy. *See U.S. Fire Ins. Co. v. Charter Fin. Group, Inc.*, 851 F.2d 957, 963 (7th Cir.1988) (interpreting Indiana law)

## C. The Terms of the Vigilant Excess Umbrella Policy

The Coverage Summary of Sutphin's Excess Umbrella Policy names Lisa S. Sutphin as the insured party and lists Vigilant as the insuring party. Appellant's App. p. 94. With respect to the coverage provided by Sutphin's Excess Umbrella Policy, the Coverage Summary provides as follows:

This Coverage Summary is part of *your* policy. **PLEASE READ *YOUR* POLICY CAREFULLY, INCLUDING THIS COVERAGE SUMMARY, FOR A COMPLETE DESCRIPTION OF *YOUR* COVERAGES.**

---

**Liability**

Amount of liability coverage: $5,000,000.

This is the total amount of *your* liability coverage. It applies to all property for which *you* have liability coverage, as shown in the following chart.

*Your* liability coverage covers damages for which *you* are legally responsible. For each occurrence, we will pay up to the amount of *your* liability coverage, as explained in *your* policy.

However, when *you* have **excess** liability only, we will pay for a covered loss **only** after the loss exceeds the required primary underlying insurance shown in *your* policy. This applies whether *you* have other liability coverage provided under a separate policy with us or by another insurance company.

| Home | HOUSE AT 6360 W 96TH ST ZIONSVILLE, IN | EXCESS LIABILITY ONLY |
|------|------|------|
| | HOUSE AT 417 SOUTH BEACH ROAD | EXCESS LIABILITY ONLY |

HOBE SOUND, FL

| Vehicle | 1999 SUBARU LEGACY | EXCESS LIABILITY ONLY |
|---|---|---|
| | 1995 MERCEDES C280 | EXCESS LIABILITY ONLY |

Whenever vehicles are shown we have included the type of Uninsured or Underinsured (UM/UIM) coverage you have selected. For vehicles where no UM/UIM appears there is no coverage. The amount of UM/UIM is determined by where the vehicle is garaged, which appears in the Mandated Coverages Section.

Appellant's App. pp. 94–95 (bold emphases in original, italics emphases added). The Excess Umbrella Policy defines the term "You" as "the person named in the Coverage Summary, and a spouse who lives with that person," here, Sutphin. Appellant's App. p. 90. The Excess Umbrella Policy defines the terms "we" and "us" as "the insurance company named in the Coverage Summary," here, Vigilant. Appellant's App. p. 90.

Further, the portion of Sutphin's Excess Umbrella Policy setting forth the terms relating to any payment for a loss by Vigilant provides as follows:

> The amount of coverage for liability is shown in the Coverage Summary. We will pay on *your* behalf up to that amount for *covered damages* from any one occurrence, regardless of how many claims, homes, vehicles, watercraft, or people are involved in the occurrence.

Appellant's App. p. 100 (emphases added). The Excess Umbrella Policy further provides that Vigilant "will pay *only for covered damages* in excess of all underlying insurance covering those damages, even if the underlying coverage is for more than the minimum amount." Appellant's App. p. 100 (emphasis added). " 'Damages' means the sum that is paid or is payable to satisfy a claim settled by [Vigilant] or resolved by judicial procedure or by a compromise [Vigilant] agree[s] to in writing." Appellant's App. p. 98. The term "underlying insurance" "includes all liability coverage other than this part of [the in-

sured's] policy that applies to the *covered damages,* except for other insurance purchased in excess of this policy." Appellant's App. p. 100 (emphases added).

The "Excess Uninsured/Underinsured Motorists Protection" section of the Excess Umbrella Policy provides as follows:

> This coverage is in effect only if excess uninsured/underinsured motorist protection is shown in the Coverage Summary.
>
> We cover damages for bodily injury and property damage a covered person is legally entitled to receive from the owner or operator of an uninsured or underinsured motorized land vehicle. We cover these damages in excess of the underlying insurance or the Required Primary Underlying Insurance, whichever is greater, if they are caused by an occurrence during the policy period, unless otherwise stated.

Appellant's App. 99, 102.

## D. Analysis

On appeal, Adkins challenges the trial court's determination that Vigilant was entitled to summary judgment on the basis that Adkins's alleged damages were not "covered damages" under the underinsured motorists section of the Excess Umbrella Policy. Adkins argues that pursuant to the terms of the underinsured motorists section of the Excess Umbrella Policy, Neese's automobile liability insurance should be considered to be "underlying insurance" giving rise to coverage un-

der the Excess Umbrella Policy. The portion of the underinsured motorists section of the Excess Umbrella Policy at issue reads as follows: "We cover these damages in excess of the underlying insurance or the Required Primary Underlying Insurance, whichever is greater, if they are caused by an occurrence during the policy period, unless otherwise stated." Appellant's App. p. 102. Specifically, Adkins argues that Vigilant's use of the disjunctive in the passage above allows Neese's automobile insurance policy to qualify as underlying insurance. However, we reject this argument in light of our reading of the contract as a whole. *See Farmers Ins. Exchange,* 757 N.E.2d at 149 (providing that the meaning of a contract can only be gleaned from a consideration of all its provisions, not from an analysis of individual words or phrases).

The Excess Umbrella Policy, when read as a whole, clearly states that it provides excess coverage *only* after the loss exceeds the *insured's* relevant underlying insurance policy. This interpretation is supported by the explicit terms of the Excess Umbrella Policy's Coverage Summary which provides as follows:

> However, when *you* have **excess** liability only, we will pay for a covered loss **only** after the loss exceeds the required primary underlying insurance shown in *your* policy. This applies whether *you have other liability coverage* provided under a separate policy with us or by another insurance company.

Appellant's App. p. 94 (bold emphases in original, italics emphases added). The Policy specifically defines the terms "you" and "your" as referring to Sutphin. Appellant's App. p. 90. Notably, in describing the coverage afforded by the Policy, the Coverage Summary uses the terms "you" or "your" approximately twelve times in describing the limits of Sutphin's coverage.

In addition, the Coverage Summary explicitly states that Sutphin's liability coverage is limited to the property listed in the following chart:

| Home | HOUSE AT 6360 W 96TH ST ZIONSVILLE, IN | EXCESS LIABILITY ONLY |
|---|---|---|
| | HOUSE AT 417 SOUTH BEACH ROAD HOBE SOUND, FL | EXCESS LIABILITY ONLY |
| Vehicle | 1999 SUBARU LEGACY | EXCESS LIABILITY ONLY |
| | 1995 MERCEDES C280 | EXCESS LIABILITY ONLY |

Appellant's App. p. 94. The Coverage Summary further states that the Excess Umbrella Policy does not provide uninsured/underinsured motorists protection to any vehicle where no uninsured/underinsured coverage appears. Appellant's App. p. 95.

Upon review, we conclude that nothing in the remainder of the Excess Umbrella Policy contradicts the terms set forth in the Coverage Summary. The terms are consistent throughout and it is clear upon a reading of the contract as a whole that the term "underlying insurance" refers to underlying insurance policies held by Sutphin. The Excess Umbrella Policy clearly states that it merely provided Sutphin with excess liability coverage for damages for

which Sutphin was legally responsible and that coverage would only be initiated after the maximum limits of Sutphin's underlying liability insurance policies had been exhausted. Here, Adkins has not proven that Sutphin was legally responsible for any of the alleged damages, and it is undisputed that neither of Sutphin's underlying insurance policies covered any of the alleged damages. Therefore, pursuant to the explicit terms of the Excess Umbrella Policy, the conditions necessary to attach Sutphin's excess liability coverage have not been met. We conclude that because the damages in question were not covered by either of Sutphin's underlying insurance policies as required by the terms of the Excess Umbrella Policy, the damages were not covered under the umbrella policy issued to Sutphin by Vigilant. *See Cincinnati Ins. Co. v. Amerisure Ins. Co.,* 644 N.E.2d 136, 140 (Ind.Ct.App.1994) (concluding that a vehicle that was not covered by the insured's required underlying automobile insurance policy could not be "an automobile covered by another policy of underlying automobile liability insurance" under the terms of umbrella policy).

Moreover, in light of our reading of the Excess Umbrella Policy as a whole, we are unpersuaded by Adkins's contention that Vigilant's use of the disjunctive in the passage stating that Vigilant covers damages "in excess of the underlying insurance or the Required Primary Underlying Insurance" allows Neese's automobile insurance policy to qualify as underlying insurance. The sentence in question, when read in conjunction with Vigilant's repeated use of the terms "you" and "your" referring to Sutphin, convinces us that the term "underlying insurance" refers to underlying liability insurance policies potentially held by Sutphin in addition to those required by the policy. This interpretation is supported by the explicit language of the Coverage Summary which reads as follows:

"This applies whether *you have other liability coverage* provided under a separate policy with us or by another insurance company." Appellant's App. p. 94. This passage allows for the possibility that Sutphin may hold other insurance policies that could potentially affect Vigilant's potential exposure, but does not suggest that Vigilant's exposure could be affected by any policy held by a third party. Adkins presents no contractual language or relevant authority that would seem to contradict our interpretation, and we find none. Thus, we conclude that the trial court did not err in granting summary judgment in favor of Vigilant.

The judgment of the trial court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.