**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**SARAH E. RESER**
Glaser & Ebbs
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**RICHARD P. SAMEK**
**DIANA C. BAUER**
Carson Boxberger LLP
Fort Wayne, Indiana



FILED

Dec 17 2012, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES KNIGHT, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1206-PL-290 |
| | ) | |
| ALLSTATE PROPERTY AND CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Nancy Eshcoff Boyer, Judge
Cause No. 02D01-1104-PL-123

**December 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Charles Knight appeals the trial court's grant of summary judgment to Allstate Property and Casualty Insurance Company ("Allstate") on his civil complaint for insurance coverage. We affirm.

## ISSUE

Knight raises one issue, which we restate as: whether the trial court erred by granting summary judgment to Allstate.

## FACTS AND PROCEDURAL HISTORY

The relevant facts are not in dispute. On May 21, 2009, Knight was injured when a vehicle operated by Brook Kelly struck his vehicle. Allstate was Knight's auto insurance provider and paid him $25,000 pursuant to a provision of its policy governing medical payments.

Kelly also had auto insurance, and her insurer paid Knight $25,000, which was the maximum limit of Kelly's policy. Knight subsequently sought additional payment from Allstate pursuant to its policy's uninsured/underinsured motorist coverage. The policy has a $50,000 per person coverage limit for damages caused by an uninsured/underinsured motorist. Allstate rejected his claim, asserting that the coverage had been exhausted. Next, Knight filed this lawsuit. Allstate filed a motion for summary judgment, and Knight responded. After a hearing, the trial court granted Allstate's motion and entered judgment in favor of Allstate. Knight filed a motion to correct error, which the trial court denied. This appeal followed.

<u>DISCUSSION AND DECISION</u>

Summary judgment is appropriate where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal, we review a summary judgment order de novo. *Bules v. Marshall Cnty.*, 920 N.E.2d 247, 250 (Ind. 2010). We construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Id.* We must carefully review a grant of summary judgment to ensure a party was not improperly denied his or her day in court. *Gasser v. Downing*, 967 N.E.2d 1085, 1087 (Ind. Ct. App. 2012).

The parties present conflicting interpretations of the insurance policy at issue. The proper interpretation of an insurance policy is generally a question of law appropriate for summary judgment. *Forman v. Penn*, 945 N.E.2d 717, 720 (Ind. Ct. App. 2011), *trans. denied*. We interpret the terms of an insurance policy using the same rules of interpretation applied to other contracts. *Auto-Owners Ins. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012), *trans. denied*. The goal of contract interpretation is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Schilling v. Huntington Cnty. Cmty. Sch. Corp.*, 898 N.E.2d 385, 388 (Ind. Ct. App. 2009), *trans. denied*. When language in an insurance policy is clear and unambiguous, we give that language its plain and ordinary meaning. *Quiring v. GEICO Gen. Ins. Co.*, 953 N.E.2d 119, 129 (Ind. Ct. App. 2011). An ambiguity is not established simply because a controversy exists and the insured asserts an interpretation contrary to that asserted by the

3

insurer.  *Castillo v. Prudential Prop. & Cas. Ins. Co.*, 834 N.E.2d 204, 206 (Ind. Ct. App. 2005).  Furthermore, the meaning of an insurance contract can only be gleaned from a consideration of all its provisions, not from an analysis of individual words or phrases. *Adkins v. Vigilant Ins. Co.*, 927 N.E.2d 385, 389 (Ind. Ct. App. 2010), *trans. denied.*

Here, the parties agree that Kelly was an uninsured/underinsured motorist as defined by Allstate's policy, so Knight is entitled to uninsured/underinsured motorist coverage under that policy, subject to a $50,000 per person limit.  In addition, Knight concedes that Allstate is entitled to subtract the $25,000 he received from Kelly's insurer from the $50,000 per person limit for uninsured/underinsured motorist coverage. However, Knight contends that the trial court erred by subtracting the $25,000 he received from Allstate for medical payments from the limits of the policy's uninsured/underinsured motorist coverage because he believes that the governing clauses in the policy are ambiguous and should be construed in favor of coverage.

Allstate responds that the policy is not ambiguous and requires the uninsured/underinsured motorist coverage to be reduced by the $25,000 payment Knight received under the medical payments coverage section of the policy.  If Allstate is correct, then the coverage limit for damages caused by an uninsured/underinsured motorist has been reached, and the trial court correctly concluded that Knight is not entitled to any additional funds.

Allstate's policy contains three sections that address different coverages:  liability insurance for bodily injury and property damage, medical payments coverage, and

uninsured/underinsured motorist coverage.[1]  A clause in the medical payments coverage section provides:

> There will be no duplication of payments made under the Bodily Injury Liability Insurance, Uninsured Motorists Insurance, and Automobile Medical Payments coverage of this policy.  All payments made to or on behalf of any person under this coverage will be considered as advance payments to that person.  Any damages payable under the Bodily Injury Liability Insurance or Uninsured Motorists coverages of this policy will be reduced by that amount.

Appellant's App. p. 105.  This reduction clause clearly and unambiguously states that payments under the medical payments section of the policy must be set off against "damages payable" under the uninsured/underinsured motorist coverage.  *Id.* Furthermore, the uninsured/underinsured motorist coverage section provides as follows, in relevant part:

> [W]e will pay damages which an *insured person* is legally entitled to recover from the owner or operator of an *uninsured auto* because of:
>
> 1.     *bodily injury* sustained by an *insured person*, . . . .

*Id.* (emphases in original).  Thus, the uninsured/underinsured motorist section of the policy uses the term "damages" to describe what the insurer will pay by reason of bodily injury.  Giving these clauses their plain and ordinary meaning, we conclude that Knight's uninsured/underinsured motorist coverage must be reduced by Allstate's payments to him under the medical payments coverage section of the policy.  Thus, the trial court properly concluded that the $25,000 payment for medical payments coverage, in combination with

---

[1] A fourth section of the policy addresses coverage for loss to the insured automobile, including towing and labor costs, comprehensive insurance for direct and accidental loss not caused by a collision, and rental reimbursement coverage, among other provisions.  The parties do not discuss this section, and it is not relevant to the question presented on appeal.

the payment Knight received from Kelly's insurer, exhausted the limits of the uninsured/underinsured motorist coverage. *See Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162, 164 (Ind. 1992) (determining that the policies' reduction language at issue was "clearly delineated" and limited the plaintiff's total recovery); *Medley v. Am. Econ. Ins. Co.*, 654 N.E.2d 313, 316 (Ind. Ct. App. 1995) (determining that under the plain language of the policy, the underinsured motorist coverage must be reduced by payments to the insured for bodily injury), *trans. denied*.

Knight argues that the uninsured/underinsured motorist coverage may only be reduced by payments made under the policy's bodily injury liability coverage. He cites the following provision in the uninsured/underinsured motorist section of the policy, in relevant part:

> The limits of this Uninsured Motorists Insurance shall be reduced by:
>
> 1. All amounts paid or payable by or on behalf of any person or organization that may be legally responsible for the bodily injury for which the payment is made, including, but not limited to, any amounts paid under the bodily injury liability coverage of this or any other insurance policy; . . . .[2]

Appellant's App. p. 107. This section provides for reduction of limits payable under uninsured/underinsured coverage by amounts paid as described. This section does not refer to payments under medical payments coverage. Such payments do not reduce the limits under uninsured/underinsured motorist coverage, but they are, as provided in the medical payments coverage, to be deducted from damages payable under

---

[2] This section also provides that limits of the uninsured/underinsured motorist coverage shall be reduced by amounts paid as worker's compensation or disability benefits. Neither restriction is relevant to this appeal.

6

uninsured/underinsured motorist coverage. There is no conflict or inconsistency between the two policy provisions.

Knight cites *Tate v. Secura Ins.*, 587 N.E.2d 665 (Ind. 1992), in support of his claim that the policy is ambiguous and must be construed in his favor. *Tate* is distinguishable. In that case, Tate was assisting with a stalled car when it was struck by a drunk driver, resulting in injury to Tate. After the drunk driver's insurance company paid the maximum limits under its coverage, Tate sued his insurer, Secura, for underinsured motorist coverage. Secura's policy contained a reduction clause, which provided, in relevant part, "Amounts payable will be reduced by . . . [a]mounts paid because of the bodily injury by, or on behalf of, persons or organizations who may be legally responsible." *Id.* at 668. Tate contended that when the total damages to an insured person exceeded the tortfeasor's liability limits, the amount of recovery under his underinsured motorist coverage was the full amount of damages sustained less the tortfeasor's liability limits already received, or the limits of the underinsured motorist coverage, whichever is less. Secura responded that where the tortfeasor's liability insurance limits are equal to those of the policy's underinsured motorist coverage, the reduction clause of the policy precluded payment. Our Supreme Court determined that the "plain and ordinary" meaning of the clause prevailed, therefore:

> the phrase "amounts payable" refer[s] to the initial insuring agreement for Coverage C-2 Underinsured Motorists Coverage wherein Secura promises to pay such bodily injury damages as its insured is legally entitled to recover from the operator of an underinsured motor vehicle. It is this amount of damages, not the coverage limit, which is the "amounts payable" to be reduced by the amount paid to Tate by or on behalf of the tortfeasor.

7

*Id.* Thus, Tate's underinsured motorist coverage limits were not a bar to his claim, and the trial court erred by granting summary judgment to Secura.

By contrast, in the current case the policy's reduction clauses use different, more specific language, and they plainly provide that payments under the uninsured/underinsured motorist portion of the policy must be reduced by payments to the insured pursuant to the medical payments coverage portion of the plan. Thus, *Tate* is not controlling and does not compel reversal of the trial court's judgment.

CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

ROBB, C.J., and PYLE, J., concur.

8