Arthur L. BELFORD and Judith R. Belford, Appellants–Plaintiffs,

v.

McHALE COOK & WELCH, a Professional Corporation, and Daniel P. Byron, Appellees–Defendants.

No. 49A02–9312–CV–667.

Court of Appeals of Indiana, Second District.

April 13, 1995.

Rehearing Denied June 6, 1995.

Don A. Tabbert, Gregory F. Hahn and James C. McKinley, Tabbert Hahn Kempf McKinley & Zanetis, P.C., Indianapolis, for appellants.

David M. Mattingly, Michael A. Wukmer and Donald M. Snemis, Ice Miller Donadio & Ryan, Indianapolis, for appellees.

## OPINION

HOFFMAN, Judge.

Appellants-plaintiffs Arthur L. Belford and Judith R. Belford appeal the entry of summary judgment in favor of appellees-defen-

dants McHale Cook & Welch (MCW), a professional corporation, and Daniel P. Byron on their claim for attorney malpractice. The facts relevant to review are recited below.

Between 1984 and 1989, Arthur served as chief executive officer of Circle Express, Inc. (CEI), a holding company with subsidiaries engaged in common carrier transport services throughout the United States. Judith served as an officer and director of CEI until 1988 when she sold the majority of her shares in the company.

In 1987, the Belfords employed MCW and Byron to represent them regarding a criminal investigation involving Judge Michael Dugan. The Belfords then hired MCW and Byron to represent them when federal investigators initiated a criminal investigation of CEI regarding allegations of fraud through the illegal manipulation of corporate earnings and to defend them in civil lawsuits brought by bondholders and shareholders of CEI.

On April 13, 1990, an Information was filed charging Arthur with conspiracy to make fraudulent statements and representations to the Securities and Exchange Commission (SEC). The Information alleged six overt acts in furtherance of the conspiracy.

On the same day, Arthur filed a petition to enter a plea of guilty, together with a request for a presentence investigation and review of the presentence report prior to entry of the guilty plea. The agreement specified *inter alia* that Arthur was advised "that the punishment which the law provides is" a minimum of 0 years' imprisonment, a maximum of five years' imprisonment, and a maximum fine of $250,000.00 "and that [his] sentence will fall within the minimum and maximum." Further the agreement provided that Arthur understood that restitution could also be imposed and that "probation may or may not be granted." In that vein, the agreement stated:

"Except for the provisions of the Plea Agreement, I declare that no officer or agent of any branch of government (federal, state or local), nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form

of leniency, if I would plead 'Guilty.' I hope to receive probation, but am prepared to accept any punishment permitted by law which the Court may see fit to impose. However, I respectfully request that the Court consider in mitigation of punishment at the time of sentencing the fact that by voluntarily pleading 'Guilty' I have saved the Government and the Court the expense and inconvenience of a trial. I understand that before it imposes sentence, the Court will address me personally and ask me if I wish to make a statement on my behalf and to present any information in mitigation of punishment."

An amended judgment dated July 12, 1990, recited Arthur's sentence. Arthur was sentenced to a three-year term of imprisonment. Restitution in the amount of $200,000.00 was ordered and a fine of $250,000.00 was imposed. One week after entry of the amended sentence, the Belfords notified Byron and MCW that they had retained different counsel.

Arthur did not initiate an appeal of the amended judgment. Instead, through new counsel, Arthur filed a motion to reduce his sentence on October 11, 1990. The motion recited the factual basis for the guilty plea. Also, the motion requested a more lenient sentence including waiver of the fine and community service in lieu of his remaining prison term. The motion was denied on October 16, 1990. Arthur did not appeal the decision.

In February 1991, Arthur was represented by another attorney at a hearing before the United States Parole Commission. At the hearing, Arthur acknowledged *inter alia* his guilt for the crime for which he had been sentenced and that his acts had caused at least $400,000.00 in losses to the shareholders of CEI. The Commission assessed the damages at a range between $400,000.00 and several million dollars. The Commission then determined Arthur should serve a minimum of 24 months' imprisonment.

In July 1991, Arthur, by new counsel, filed a motion collaterally attacking the validity of his guilty plea and sentence pursuant to 28 U.S.C. § 2255. In his motion, Arthur alleged

Byron and MCW were ineffective in their representation. Arthur's motion was denied by the District Court. Arthur appealed the denial to the Seventh Circuit Court of Appeals. In his Seventh Circuit appeal, Arthur requested relief because he was raising constitutional issues not raised previously and that the failure to appeal earlier was due to Byron's failure to advise Arthur of his limited appellate rights. Thus, according to Arthur, Byron's ineffective assistance constituted the requisite "cause and prejudice" in a § 2255 motion. The Seventh Circuit affirmed denial of the motion. *Belford v. U.S.* (7th Cir.1992), 975 F.2d 310, 316.

In July 1992, the Belfords filed their complaint alleging three counts of professional malpractice by Byron and MCW due to Byron's representation. In Count I, Arthur alleged malpractice regarding the criminal investigation and ultimate guilty plea and sentencing. In Count II, Arthur and Judith alleged malpractice relative to the same investigation and ultimate guilty plea resulting in a conflict of interest. In Count III, Arthur and Judith alleged malpractice regarding the defense of the civil lawsuits brought by bondholders and shareholders of CEI.

On August 18, 1993, the trial court entered partial summary judgment in favor of Byron and MCW. The court concluded that "there is no just reason for delay" and granted summary judgment as to all issues except "Judith Belford's alleged conflict of interest in negotiating the Plea Agreement against MCW as stated in Count II of the Complaint and Plaintiffs' alleged negligence and conflict of interest in connection with the [civil suits] against MCW and Byron as stated in Count III of the Complaint." This appeal ensued.

The Belfords raise five issues for review. As restated, the dispositive issues are:

(1) whether Arthur's repeated acknowledgment of his guilt, coupled with the plain language of the guilty plea agreement, act to bar a claim that Arthur did not receive the sentence that he expected after discussions with Byron;

(2) whether the Belfords are collaterally estopped from pursuing a malpractice claim arising from a conviction and sentence which were affirmed by the United States District Court and the Seventh Circuit Court of Appeals, both of which determined the issue of ineffective assistance of counsel adversely to Arthur; and

(3) whether the court erred in finding that Judith's claim for punitive damages could not stand.

■■■ Review of a ruling on summary judgment requires this Court to implement the same standard used by the trial court. This Court must liberally construe all designated evidentiary matter in favor of the non-moving party and resolve any doubt against the moving party. Even if it appears that the non-moving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences. Where material facts are not in dispute, the issue is the application of the law to the facts. *Fidelity Financial Services v. Sims* (1994), Ind. App., 630 N.E.2d 572, 574.

Arthur contends that Byron led him to believe that he would receive probation and a lesser fine, because he was pleading guilty. Also, Arthur alleges that the facts underlying the charge improperly included assertions regarding the manipulation of insurance reserves rather than use of corporate "perks" to which he believed he was pleading guilty.

Review of the plea agreement and the presentence report prepared by the U.S. Probation Office belie Arthur's contentions. In addition to the evidence recited above, the plea agreement and presentence report contain numerous references to the voluntariness of the guilty plea and awareness of the potential sentence and fine. Further, the evidence discloses admissions of wrongdoing by Arthur including a statement that Arthur would make no claim of innocence.

Although the presentence report contains assessments that Arthur played a passive role in the wrongdoing and recommended some leniency on that basis, it clearly sets out acts supporting the guilty plea. Arthur's contentions now that others were equally or more to blame, that his guilty plea foreclosed further investigation into wrongdoing by family members, and that his cooperation

saved great expense to the government during the investigation all largely comport with statements within the presentence report.

The presentence report contains *inter alia* financial information regarding Arthur and Judith, personal information which is favorable in its tone, and background information which notes Arthur's culpability but casts Arthur's acts as less than malevolent. The government's version of the events characterized Arthur's assistance as "extremely helpful" and noted that Arthur "has saved the government a tremendous amount of investigative time and effort, and the government feels that this cooperation should be taken into account in considering his plea in this case." Further, the government's version noted the culpability of many others who assisted in misleading investors. The presentence report recommended a weighing of the "enormity of the offense plus the need for deterrence against the defendant's stable background, cooperation with the government and the financial repercussions he will face." Clearly, Byron was successful in casting Arthur in a favorable light during the investigation and the guilty plea stages of the proceedings. The fact that the sentencing court was aware of the mitigating factors, yet imposed the sentence it did, weighs heavily against Arthur's allegations that Byron's representation was inadequate.

■ As distilled, Arthur's argument appears to be that he believes he was entitled to a lesser sentence based upon the mitigating factors. In the instant case, Arthur recounted the various factors in mitigation of the wrongdoing as if they were not presented to the sentencing court by his counsel. As noted above, such is not the case.

The sentencing court imposed a sentence within the range of possible sentences. Moreover, and paramount in our review, Arthur was aware of the range of sentences and repeatedly acknowledged his readiness to be sentenced for the acts to which he admitted. That he passionately believes the sentence and fine to be too harsh does not indict the performance of his attorney.

Next, Arthur contends that the finding by the Federal District Court, later affirmed by the Seventh Circuit Court of Appeals, that he did not receive ineffective assistance of counsel should not act to collaterally estop his malpractice claims stemming from the same proceedings. Review of the analysis in the concurring opinion in *Hockett v. Breunig* (1988), Ind.App., 526 N.E.2d 995, 999–1003, Shields, J. concurring, is profitable. In *Hockett* a criminal defendant, who pleaded guilty, later filed post-conviction proceedings alleging ineffective assistance of counsel and an action for legal malpractice. The post-conviction court determined that the defendant knowingly, voluntarily, and intelligently entered into the plea agreement and that counsel was not ineffective. The decision was affirmed on appeal. *Id.* at 997.

The concurring opinion outlines the standards for determining ineffective assistance of counsel and legal malpractice, and demonstrates that a finding that counsel was not ineffective provides the necessary identity of issues to preclude a malpractice action stemming from the same proceedings. The concurring opinion states:

> "There is an identity of issues in Hockett's legal malpractice claim and his post-conviction relief proceeding: the alleged ineffective assistance of Hockett's counsel, Breunig and Gilroy. Following *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, our supreme court has applied a two-step analysis in reviewing claims of ineffective assistance. Under the first step, 'the defendant must demonstrate that the alleged acts or omissions by counsel fell outside the wide range of competent professional assistance.' [Citation omitted.] This step has also been referred to as applying the standard of 'reasonably effective assistance.' [Citation omitted.] The second step is the prejudice component: 'the defendant will be entitled to relief only if the reviewing court determines that counsel's errors had an adverse effect upon the judgment.' [Citations omitted.]
>
> On the other hand, the elements for a cause of action for legal malpractice are:
>
> 1) the employment of the attorney (the duty);

2) the failure of the attorney to exercise ordinary skill and knowledge (the breach); and

3) that such negligence was the proximate cause (causation);

4) of damage to the plaintiff (damage). [Citation omitted.]

The first step of the *Strickland* standard and the breach element of legal malpractice are identical, *i.e.*, counsel must act reasonably. In addition, the second step in the *Strickland* standard, prejudice, and the causation element of a malpractice claim are identical. Further, the burdens of proof applicable to a post-conviction relief petition and a legal malpractice claim are identical. Both are civil proceedings using a preponderance of the evidence standard . . . ."

*Id.* at 1003. Finding that the defendant had been afforded a fair opportunity to litigate his claim regarding assistance of counsel, the concurring opinion found that judgment was properly granted in favor of counsel.

■ Such is the case here. Arthur has litigated this issue in federal proceedings collaterally attacking the sentence. The issue of ineffective assistance of counsel was decided unfavorably to him and affirmed in a decision by the Seventh Circuit Court of Appeals. *See Belford*, 975 F.2d 310. As a matter of law, the trial court properly granted summary judgment in favor of Byron and MCW on Arthur's claim for malpractice relating to the investigation, guilty plea, and sentence.

Finally, Judith complains that the trial court improperly granted summary judgment as to her claim for punitive damages. Judith's claim of malpractice arising from Byron's representation of both her and Arthur in civil proceedings, along with Byron's representation within the scope of the guilty plea which induced her to pay large sums in restitution, are still viable claims and not subjects of the partial summary judgment.

Although Judith did not specifically plead a claim for punitive damages within the complaint, she contends that the allegations that Byron and MCW engaged in willful, wanton, oppressive, and grossly negligent conduct sufficiently stated a claim for punitive damages. Byron and MCW contend that neither the complaint nor the designated facts support a claim for punitive damages.

■ To establish a claim for punitive damages, conduct constituting malice, fraud, gross negligence or oppressiveness inconsistent with mistake of law or fact, honest error in judgment, overzealousness, mere negligence, or other noniniquitous human failing, together with service to the public interest in such an award must be demonstrated. *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 137. Judith makes no more than bald assertions that the conduct was grossly negligent and oppressive. The assertions in no way negate mistake, honest error in judgment, overzealousness, mere negligence or other noniniquitous human failing.

Moreover, as noted by Byron and MCW, any service to the public interest in making such an award is lacking. The presentence report amply demonstrates that Arthur's plea foreclosed further investigation into wrongdoing by family members and required restitution from family resources because they had gained enormous benefit from the wrongdoing. While an offer to discontinue further investigation of family members is far from an implication of guilt, clearly it was proper to include in restitution gains realized by family members which resulted from Arthur's wrongdoing. Public policy could not be served by allowing family members to escape further investigation, yet request punitive damages for the loss of ill-gotten gains.

The award of partial summary judgment is affirmed.

Affirmed.

BAKER and KIRSCH, JJ., concur.