**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

**THOMAS D. BLACKBURN**
Blackburn & Green
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**JOSEF D. MUSSER**
Spitzer Herriman Stephenson
Holderead Musser & Conner, LLP
Marion, Indiana

FILED
Apr 18 2013, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TORY SIMMERS, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 17A04-1211-CT-577 |
| | ) | |
| UNITED FARM FAMILY MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE DEKALB SUPERIOR COURT
The Honorable Nancy Eshcoff Boyer, Special Judge
Cause No. 17D01-1008-CT-32

**April 18, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Following a motor vehicle accident, Tory Simmers settled with at-fault party's insurer for the liability coverage policy limit of $50,000. Simmers then sought to recover additional compensation from United Farm Family Mutual Insurance Company (Insurer) under an insurance policy containing provisions for medical expense coverage up to $5000 per person and underinsured motorist coverage up to $100,000 per person. The parties disagreed about whether the policy language entitled Simmers to receive the full amounts of both the medical expense coverage and the underinsured motorist coverage, and each party filed a motion for summary judgment asking the trial court to interpret the policy in its favor. In granting summary judgment to Insurer, the trial court determined that the policy entitled Insurer to a setoff against the underinsured motorist coverage in the amount of $5000 for medical payments that Insurer had previously made.

On appeal, Simmers contends that the trial court erred in granting summary judgment to Insurer. Although we disagree with the provision upon which the trial court apparently relied in granting summary judgment, we nevertheless conclude that the trial court correctly determined that Insurer was entitled to a $5000 setoff and summary judgment in its favor. Accordingly, we affirm the judgment of the trial court.

FACTS

On December 29, 2008, Simmers was seriously injured in a motor vehicle accident for which the driver of the other vehicle was at fault. The parties agree that Simmers suffered damages in excess of $105,000, $43,388.49 of which were medical expenses.

2

At the time of the accident, Simmers was a passenger in a vehicle driven by Chelsea Neuhaus and owned by Neuhaus's mother, Beth Jennings. Amber Eib, the driver of the other vehicle, had been driving a vehicle owned by her father, Kenneth Eib. Both vehicles were insured through Insurer. The Eib policy provided liability coverage of up to $50,000 per person for bodily injury. The Jennings policy included medical expense coverage for up to $5000 per person and underinsured motorist coverage of up to $100,000 per person and $300,000 per accident.

On August 5, 2010, Simmers filed a complaint against Amber Eib and Insurer, requesting compensatory damages from Eib and medical expense and underinsured motorist benefits from Insurer under the Jennings policy. At some point, Insurer paid $5000 toward Simmers's medical expenses under the Jennings policy. Simmers later settled his claim against Eib for $50,000, which was equal to the policy limits of Eib's liability coverage for bodily injury. Simmers then sought to recover $50,000 under Jennings's underinsured motorist coverage.[1] Although Insurer agreed that Simmers was an insured under the Jennings policy, it claimed that the policy's underinsured motorist coverage provided for a subrogation lien against the $5000 that Insurer had already paid out in medical payments, thus reducing its remaining liability under the Jennings policy to $45,000 rather than $50,000.

---

[1] The parties agree that Insurer was entitled to a setoff against its underinsured motorist coverage limit of $100,000 for the $50,000 received by Simmers under the Eib policy.

3

After stipulating to the relevant facts and designating the insurance policy as evidence, both parties filed motions for summary judgment. The trial court granted summary judgment in favor of Insurer. Simmers now appeals.

DISCUSSION AND DECISION

On appeal, Simmers argues that the trial court erred by determining that Insurer could offset $5000 in medical payments made against the Jennings policy's underinsured motorist coverage limit. More particularly, Simmers contends that the policy terms required his written consent for such a setoff, which he did not give, and that allowing a setoff made the medical expense coverage illusory.

In reviewing the grant of a motion for summary judgment, we apply the same standard applicable to the trial court, namely that summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wagner v. Yates, 912 N.E.2d 805, 808 (Ind. 2009). Here, the parties have stipulated to the relevant facts, leaving only terms of the insurance policy at issue. We interpret the terms of an insurance policy using the same rules of interpretation that apply to other contracts. Briles v. Wausau Ins. Cos., 858 N.E.2d 208, 213 (Ind. Ct. App. 2006). More specifically, the following rules apply:

> When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. We construe the insurance policy as a whole and consider all of the provisions of the contract and not just individual words, phrases or paragraphs. If the language is clear and unambiguous, we give the language its plain and ordinary meaning. An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its

4

meaning. However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language.

Id. (internal citations omitted).

Where an ambiguity does exist, we are required to construe an insurance policy strictly against the insurer and to view the policy language from the insured's perspective. Wagner, 912 N.E.2d at 805. Such strict construction is essential "particularly where an exclusion of coverage is concerned." Masten v. AMCO Ins. Co., 953 N.E.2d 566, 570 (Ind. Ct. App. 2011), trans. denied. However, "the power to interpret contracts does not extend to changing their terms and we will not give insurance policies an unreasonable construction to provide additional coverage." Briles, 858 N.E.2d at 213.

Here, both the medical expense coverage provision and the underinsured motorist coverage provision from the Jennings policy are at issue. The relevant language from the medical expense coverage provision, found in Part II of the Jennings policy, states:

> We will pay the reasonable medical expenses incurred by or for an insured who sustains bodily injury caused by an accident.
>
> . . .
>
> OUR LIMIT OF LIABILITY
>
> Regardless of the number of vehicles insured, insureds, claims made or vehicles involved in the accident, the most we will pay for all medical expenses for an insured in any one accident is the limit of the Medical Expense Coverage shown in the declarations for "Each Person."
>
> . . .
>
> Medical expenses payable under this coverage will be reduced by any amounts owed or paid under the . . . Uninsured/Underinsured Bodily Injury

5

coverages of this policy. No payment will be made under this coverage unless the injured person or his legal representative agrees, in writing, that any payment will be applied toward any settlement or judgment the person receives under . . . Part IV.

Appellant's App. p. 85-86.

The underinsured motorist coverage provision is found in Part IV of the Jennings

policy and states:

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured or underinsured motor vehicle. The bodily injury must be caused by an accident arising out of the ownership, maintenance or use of an uninsured or underinsured motor vehicle.

. . .

OUR LIMIT OF LIABILITY

1. Regardless of the number of insured automobiles, insureds, claims made, or motor vehicles involved in the accident, our limit of liability is as follows:

a.   If separate amounts are shown in the declarations for Coverage K, Bodily Injury and Coverage L, Property Damage:

(1) The most we will pay for all damages resulting from bodily injury under Coverage K to any one person caused by any one accident is the Bodily Injury limit shown in the declarations for "Each Person."

. . .

2. Subject to the "Each Accident" limit of liability, the most we will pay under Coverage K will be the lesser of:

a.   the difference between the amount paid or payable in damages to the insured by or for any person or organization who may be liable for the

6

bodily injury and the "Each Person" limit of Uninsured or Underinsured Motorists coverage provided in the insured's policy; or

b. the difference between the total amount of damages incurred by the insured and the amount paid or payable by or for any person or organization liable for the insured's bodily injury.

. . .

4. Any amounts payable for damages under these coverages shall be reduced by any amount paid or payable to or for the insured:

a. under any workmen's compensation law, disability benefits law or other similar law; or

b. for bodily injury under Part I of this policy.

5. We shall not be obligated to pay under these coverages that portion of the damages which the insured may be entitled to recover which represent medical expenses paid or payable to the insured under Part II . . . .

Id. at 90-91.

The trial court found that the policy language was not ambiguous and that "[t]he policy clearly states [Insurer] shall not be obligated to pay that portion of damages which represent medical expenses previously paid to the insured." Appellant's App. p. 6. Thus, it appears that the trial court based its decision to grant summary judgment to Insurer on subsection 5 of the underinsured motorist coverage limitation of liability provisions. Then, citing to Shelter Insurance Company v. Woolems, 759 N.E.2d 1151 (Ind. Ct. App. 2011), the trial court stated that "where the policy clearly states the limit of liability, the insured cannot receive more than that amount from the insurer." Id.

7

Simmers contends that <u>Shelter</u> is distinguishable and that <u>Standard Mutual Insurance Company v. Pleasants</u>, 627 N.E.2d 1327 (Ind. Ct. App. 1994), demands a different result. In <u>Pleasants,</u> this Court held that language similar to that of subsection 5 was unambiguous and that it prohibited double recovery under the uninsured motorist coverage for the <u>exact same expenses</u> already paid under the uninsured motorist coverage, but it "does not prohibit an insured from recovering the limits of both her uninsured motorist coverage and her medical payments coverage, when the amount of damages the insured is entitled to recover equals or exceeds the combined limits of the medical payments and uninsured motorists coverage. 627 N.E.2d at 1330. Here, where both parties agree that Simmers's total damages are in excess of $105,000, there is no risk of double recovery, and this provision would therefore seem not to provide for a $5000 setoff against the uninsured motorist coverage limit of $100,000.

Nevertheless, another provision in the Jennings policy arguably does provide for the setoff granted by the trial court under the circumstances of this case. A provision in the medical expense coverage limitation of liability section provides in part that "[m]edical expenses payable under this coverage will be reduced by any amounts owed or paid under the . . . Uninsured/Underinsured Bodily Injury coverages of this policy." Appellant's App. p. 86. The phrase "medical expenses payable under this coverage" refers back to the initial insuring agreement, which provides that Insurer "will pay the reasonable medical expenses incurred by or for an insured who sustains bodily injury cause by an accident." Appellant's App. p. 85; <u>see</u> <u>Beam v. Wausau Ins. Co.</u>, 765 N.E.2d

8

524, 530-31 (Ind. 2002) (holding that the phrase "under this coverage" "is a general phrase contained in insurance agreements that refers to the scope of the initial insuring agreement, not the dollar amount of the policy limit"). "Medical expenses" are defined under the Jennings policy as "expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, and professional nursing services . . . ." Id. at 80.

As noted above, Simmers had $43,388.49 in medical expenses, of which Insurer paid $5000 in an initial payment under the Jennings policy. As discussed earlier, it does not appear that Insurer was entitled to a $5000 setoff against the underinsured motorist coverage under subsection 5 of that coverage's limitation of liability provisions. However, this provision makes clear that Insurer is entitled to reduce the amount owed under the medical expense coverage by any amount owed under the underinsured motorist coverage. Thus, Simmers is seemingly entitled to a setoff of $100,000 against his total medical expenses of $43,388.49 under this provision, making his recovery under the medical expense coverage $0.

Contrary to Simmers's contentions, permitting this setoff does not render the medical expense coverage illusory. This is because had Simmers's medical expenses been greater than $100,000, he would have been entitled to receive the amount in excess of the setoff amount up to the medical expense coverage policy limit of $5000. See Meridian Mut. Ins. Co. v. Richie, 544 N.E.2d 488, 489-90 (Ind. 1989) (concluding that coverage is not illusory if one theoretically could have received coverage under different facts).

9

Simmers also contends that Insurer waived its right to any setoff against the medical expense coverage when it made $5000 in medical payments on his behalf without first securing his written consent as required by the policy. Simmers directs us to the next sentence in the medical expense coverage limitation of liability provision, which provides that "[n]o payment will be made under this coverage unless the injured person or his legal representative agrees, in writing, that any payment will be applied toward any settlement or judgment the person receives under . . . Part IV." Appellant's App. p. 86. Simmers argues that this sentence, requiring his written consent prior to any medical expense payments, creates a condition precedent to the setoff contemplated by the previous sentence. Stated otherwise, Simmers contends that because Insurer made a $5000 payment under the medical expense coverage without first receiving his consent, Insurer waived its right to the setoff under the Jennings policy.

When reading this provision along with the entire policy as a whole, we conclude that the provision did not create a condition precedent to the application of the medical expense setoff. Rather, the provision appears to have been intended to create a substantive right to the setoff and to further establish a suitable procedure for guaranteeing that setoff. Although Insurer failed to follow its own procedure, this does not change the fact that the substantive right to the setoff nevertheless exists under the Jennings policy when the policy is interpreted as a whole. Indeed, there is no express provision anywhere else in the policy that would allow for the waiver that Simmers seeks.

10

Finally, we note as an aside that we are not convinced by Insurer's argument that Simmers admitted providing his written consent to the setoff by entering into "Stipulation No. 21," which provided that "Tory Simmers has cooperated and complied with all conditions precedent with regard to the [Jennings policy]." Appellant's App. p. 69. We find that the parties intended this stipulation to show that Simmers was able to bring an action against Insurer under the policy, not as evidence that he provided his written consent to a setoff for the medical expenses paid. See Appellant's App. p. 94 (requiring "full compliance with all the terms of this policy" before an insured can bring legal action against Insurer); see also Marshall Cnty. Redi-Mix, Inc. v. Matthew, 458 N.E.2d 219, 222 (Ind. 1984) (stating that a stipulation should be given the meaning intended by the parties and not extended by construction).

Accordingly, we conclude that although summary judgment may have been granted based upon an erroneous interpretation of one provision in the policy, the trial court was nevertheless correct in its ultimate conclusion that Insurer was entitled to a $5000 setoff for the medical payments it made under the medical expense coverage. Thus, summary judgment in favor of Insurer was proper.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.

11