## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 08 2019, 8:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Patrick J. Olmstead, Jr.
Patrick Olmstead Law LLC
Greenwood, Indiana

Eric C. Bohnet
Eric C. Bohnet, Attorney at Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:
EVERETT CASH MUTUAL
INSURANCE COMPANY AND
EVERETT CASH MUTUAL
INSURANCE GROUP

J. Blake Hike
Larry L. Barnard
Carson Boxberger LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Edwin Blinn, Jr. and Lisa Blinn, d/b/a Blinn Enterprises and Washington Bradford Building, LLC,

*Appellants-Plaintiffs,*

v.

Everett Cash Mutual Insurance Company, Everett Cash Mutual Insurance Group and Excel Insurance Services, Inc.,

*Appellees-Defendants.*

January 8, 2019

Court of Appeals Case No. 18A-PL-262

Appeal from the Grant Circuit Court

The Honorable Mark E. Spitzer, Judge

Trial Court Cause No. 27C01-1306-PL-26

**Robb, Judge.**

# Case Summary and Issues

[1] Edward Blinn, Jr. and Lisa Blinn, d/b/a Blinn Enterprises (collectively, "the Blinns") and Washington Bradford Building, LLC, sued Everett Cash Mutual Insurance Co. and Everett Cash Mutual Insurance Group (collectively, "ECM") seeking recovery under an insurance contract.[1] The Blinns now appeal the trial court's grant of summary judgment to ECM on the Blinns' complaint for recovery of debris removal expenses under the insurance contract and for bad faith by ECM, raising several issues for our review that we consolidate and restate as two: 1) whether the trial court erred in granting summary judgment to ECM as to the debris removal expenses claim; and 2) whether genuine issues of material fact remain as to whether ECM acted in bad faith in handling the Blinns' claim. Concluding the trial court properly granted summary judgment on both claims, we affirm.

# Facts and Procedural History

[2] In 2011, the Blinns owned a building in Marion, Indiana, that had been converted from an elementary school to a thirty-two unit apartment building.

---

[1] The Blinns also named in their complaint Excel Insurance Services, Inc., their agent who procured the ECM policy, claiming negligence and/or negligent procurement of insurance by Excel. It is not clear from the parties' briefs and appendices whether Excel is still involved in this litigation at all, but it is not involved in this appeal. We have therefore limited our recitation of the facts to only those relevant to ECM.

Blinn Enterprises, in which Edward and Lisa were the principals, operated the building. On March 11, 2011, the Blinns secured a $1,000,000 actual cash value ("ACV") insurance policy with a $3,000 deductible on the building via an insurance policy issued by ECM.[2] Fire was a covered peril. One of the additional coverages provided under the policy was for debris removal expenses:

> 1. Debris removal – We cover the cost to remove the debris of covered property that is caused by a covered peril.
> * * *
> We do not pay any expenses unless they are reported to us in writing within 180 days from the date of direct physical loss to the covered property.

Appendix of Appellants, Volume 2 at 72.

[3] On June 7, 2011, the building was damaged by a fire set by one of the tenants.[3] On that same date, Greg Smith was assigned to adjust the claim and conducted an initial inspection of the premises. He notified ECM by a letter titled "First Report" and dated June 30, 2011, that the building appeared to be a total loss

---

[2] Blinn Enterprises, Inc. was the named insured on the policy.

[3] Shortly after the fire, the Blinns transferred ownership of the property to Washington Bradford Building, LLC "[b]ecause of the risk of damage during the demolition and debris removal during the remodeling" of the building. App. of Appellants, Vol. 2 at 43. ECM claimed this transfer to an entity not insured by ECM extinguished the Blinns' insurable interest because the policy had a non-assignability clause. The trial court found in its summary judgment order that because the transfer occurred post-loss, the claim was assignable without ECM's consent. *See* Appealed Summary Judgment Order at 6. Although ECM includes the assignment provision from the policy in its Statement of the Facts, *see* Brief of Appellees at 9, ECM does not advance an argument regarding that adverse determination.

and that the Blinns had initiated the debris removal process. App. of Appellants, Vol. 3 at 186-87. On July 22, 2011, Martin Enterprises, Inc. sent a proposal to Smith "to provide labor and equipment to demolish the old apartment building completely and dispose of material off site, then fill area of demo with material on site to Martin's new grades" for $228,000. *Id.*, Vol. 3 at 160. On October 25, 2011, Hile Construction provided an estimate for repair work on the building including $18,500 for dumpsters and $8,000 for debris removal. *Id.*, Vol. 4 at 142.[4] On October 31, 2011, Smith submitted an interim report to the law firm now representing ECM that included the Hile Construction estimate. *See id.*, Vol. 4 at 143.

[4] As of September 29, 2011, ECM had apparently not made an offer of settlement and the Blinns' attorney contacted an ECM claims manager requesting an offer or an explanation of the delay. *Id.*, Vol. 4 at 136. On October 13, 2011, the Blinns filed a complaint with the Indiana Department of Insurance about ECM's inaction.[5] Part of the complaint alleged the Blinns had incurred "many expenses" for demolition of the building but ECM had not yet "given us a date on any payments, made any payments and have not attempted to settle this claim." *Id.*, Vol. 4 at 140.

---

[4] Based on how the categories of costs are grouped in the estimate, $9,230 for permits may be included as part of the debris removal estimate.

[5] It is not clear what, if anything, happened as a result of this complaint.

[5]     ECM advanced $100,000 to the Blinns in October 2011. In January 2012, an appraiser hired by ECM determined the ACV of the building was $745,500.[6] ECM advanced an additional $200,000 in February and $442,500 in March 2012. The total amount advanced equaled the ACV as determined by ECM's appraiser minus the deductible.

[6]     On January 23, 2012, 230 days after the fire, the Blinns, by counsel, sent a letter to the attorney representing ECM that included the following:

> One additional issue we have not discussed is demolition/clean-up coverage. My understanding is that such coverage is available on the subject policy in addition to the ACV coverage and Mr. Blinn will have expenses covered by that policy benefit in addition to the ACV loss on the property.

*Id.*, Vol. 4 at 249. No documentary evidence supporting debris removal expenses was provided at that time. In March 2012, ECM forwarded a copy of its appraisal to the Blinns and the Blinns reciprocated with their own appraisal. The Blinns' counsel then wrote to ECM, noting that "[w]ith [your] appraisal and including all debris removal or clean up coverage, the indicated indemnity obligation is at least $936,250." Appellees' Appendix, Volume IV at 74. Again, however, no documentary evidence of debris removal expenses was provided to ECM. In April, after ECM had submitted the third advance payment to the Blinns, ECM requested documentation of the debris removal

---

[6] In October 2011, ECM's appraiser appraised the property at $802,500. *See* App. of Appellants, Vol. 4 at 4. After receiving further information from the Blinns, the appraiser revised his appraisal to $745,500.

expenses and asked that Edward submit to an examination under oath as required by the policy. The Blinns provided documentation in April and June 2012 that ECM believed had no apparent relation to debris removal. At Edward's first examination under oath, in August 2012, he admitted that the provided documentation did not distinguish between debris removal and other activities on the property and that no such records were kept by the Blinns:

> Q: [W]ould you ever be able to provide any documentation that would allow us to differentiate between sweeping up loose debris that was in place after the fire was extinguished in contrast with the term I use which is tear-out?
>
> A: There would be no documentation between the two.
>
> Q: [T]here's no way that you can provide us with that information, correct, because those records weren't generated for whatever reason?
>
> A: Correct.

*Id.*, Vol. IV at 88.

[7] On June 6, 2013, failing to have reached an agreement as to the amount of the Blinns' loss, the Blinns filed their complaint against ECM alleging breach of contract and bad faith. The ACV of the building was settled at $745,500 via the appraisal process described in the policy.[7] On July 5, 2016, ECM filed a motion

---

[7] The Blinns had obtained an appraisal of $1,200,000 for the building. Failing to agree with ECM on a valuation, the Blinns invoked the appraisal process provided in the policy. After the appraisal process was

for summary judgment on all remaining issues: the Blinns' claims for debris removal coverage under the policy and for bad faith. ECM claimed the Blinns are not entitled to recover debris removal expenses because they failed to timely submit a claim for those expenses and failed to produce documentation of their debris removal expenses. ECM also claimed the Blinns were not entitled to punitive damages for bad faith.

[8] While ECM's motion for summary judgment was pending but before the Blinns filed their response,[8] the Blinns filed a motion to compel claiming entitlement to discover ECM's attorneys' files because "the attorneys were performing the business functions and duties that ECM owed to the [Blinns]." App. of Appellants, Vol. 5 at 3. The Blinns asserted in a sixty-two page, 347 paragraph motion that because this was insurance adjustor work and not legal work, the files are not protected from disclosure. The trial court's order on the motion to

---

completed and the umpire determined the ACV was $745,500, ECM requested that the Blinns dismiss their Building Property Coverage claims as they had already been compensated the full amount of the ACV. A year after that request, the Blinns had still not done so. An order of partial summary judgment was entered in December 2015 determining that the appraisal process was binding with respect to the ACV of the building.

Also, at some point the Blinns made a claim for lost earnings or rent under the policy. In February 2014, the Blinns' counsel indicated to ECM's counsel that the Blinns had agreed to withdraw this claim because there was no such coverage in the policy. But again, they did not dismiss it at ECM's request. The December 2015 order of partial summary judgment determined ECM was entitled to rely on that representation and granted summary judgment as to the lost earnings or rent claim.

[8] The Blinns requested and received four extensions of time to respond to ECM's motion for summary judgment. It was not until after the second extension of time was granted that the Blinns filed this motion to compel. The Blinns' fourth request for an extension of time requested the time for a response be extended until after the trial court ruled on the motion to compel. The trial court ruled on the motion to compel on November 29, 2016, and the Blinns finally responded to the motion for summary judgment on January 30, 2017.

compel found that ECM's attorney "was not hired as adjuster, but as counsel, in anticipation of litigation" after the Blinns retained counsel and filed a complaint with the Department of Insurance. Appealed Order on Motion to Compel at 2. "Thus, it would appear that ECM has asserted a valid claim of privilege regarding the documents and information not disclosed in discovery." *Id.* at 3. Although effectively denying the motion to compel, the court did find that a privilege log tendered by ECM was "somewhat cryptic" and directed ECM to issue a revised privilege log within thirty days of the date of the order. *Id.* The parties were directed to then meet and confer to determine if any discovery disputes remained and if another hearing was necessary. It does not appear any further motions were filed or hearings were held regarding discovery.

[9] The trial court's order denying the motion to compel also set a timeline for the Blinns to respond to the motion for summary judgment, for ECM to reply thereto, and set a corresponding hearing. The Blinns timely filed their response to summary judgment and designation of evidence in January 2017 and a hearing was held in March. Following the hearing, the trial court entered an extensive order and granted summary judgment to ECM on all claims. The Blinns filed a motion to correct error that was denied by the trial court after a hearing. The Blinns now appeal the trial court's denial of their motion to compel and the grant of ECM's motion for summary judgment.

# Discussion and Decision

# I. Standard of Review

## A. Motion to Correct Error

Generally, a trial court has wide discretion to correct errors, and we will reverse only for an abuse of that discretion. *Paulsen v. Malone*, 880 N.E.2d 312, 313 (Ind. Ct. App. 2008). An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom, or if it is based on impermissible reasons or considerations. *Id*. However, to the extent the issues are purely questions of law, our review is de novo. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*. Our standard for reviewing a decision on a motion to correct error nevertheless directs us to consider the underlying order—here, the order granting ECM's motion for summary judgment.

## B. Motion for Summary Judgment[9]

The interpretation of an insurance policy, like the interpretation of any contract, presents a question of law and is appropriate for summary judgment. *Didion v.*

---

[9] Indiana Appellate Rule 50(A)(1) states that the purpose of an Appendix in a civil appeal is "to present the Court with copies of only those parts of the Record on Appeal that are necessary for the Court to decide the issues presented." This is to include "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal[.]" Ind. Appellate Rule 50(A)(2)(f).

The Blinns appendices (including a supplemental appendix filed after ECM filed its brief and appendices) contain the following: the appealed orders (order on summary judgment, order on motion to compel, and order denying the Blinns' motion to correct error); the Blinns' complaint; the Blinns' Response in Opposition to Summary Judgment; the Blinns' Designation of Evidence in Opposition to Motion for Summary Judgment with some but not all of the attached exhibits (the designation lists thirty-five exhibits, but only

*Auto-Owners Ins. Co.*, 999 N.E.2d 108, 112 (Ind. Ct. App. 2013). On appeal, we review summary judgment with the same standard employed by the trial court: relying only on the evidence designated by the parties and construing all facts and reasonable inferences in favor of the non-moving party, we will affirm the grant of summary judgment "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C); *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 137 (Ind. 2016). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth . . . or if the undisputed material facts support conflicting reasonable inferences." *Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 253 (Ind. 2015) (citation omitted).

---

twenty-five exhibits are included in the appendices); and the Blinns' Motion to Compel Production of Documents and Testimony with attached exhibits. The appendices do not include any of ECM's pleadings or designated evidence.

Considering our standard of review requires us to stand in the shoes of the trial court and rely only on the evidence designated to the trial court, it is difficult for us to understand why the Blinns thought we could fully and completely decide the issues presented when they did not provide to us the entirety of the summary judgment materials available to the trial court. We are especially troubled by the Blinns' selective inclusion of their designated evidence. However, ECM provided some additional material in their appendices, including ECM's Memorandum in Support of Motion for Summary Judgment; ECM's Designation of Evidence and attached exhibits; ECM's Reply in Support of Motion for Summary Judgment; ECM's Response in Opposition to the Motion to Compel; and ECM's Statement in Opposition to Motion to Correct Error. We therefore believe we have a sufficiently complete picture to determine whether summary judgment was properly granted, but we caution counsel to provide *all* pertinent parts of the record in future filings as the appellant in this court.

[12] The moving party has the initial burden to show the absence of any genuine issue of material fact as to a determinative issue. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Indiana law requires the moving party to "affirmatively negate an opponent's claim." *Id.* The burden then shifts to the non-moving party to come forward with contrary evidence showing an issue to be determined by the trier of fact. *Id.* We construe the evidence in the light most favorable to the non-movant and resolve all doubts about the existence of a genuine issue of material fact against the movant. *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 310 (Ind. Ct. App. 2016), *trans. denied.* "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley*, 15 N.E.3d at 1004. The non-prevailing party has the burden of persuading us that the trial court's ruling was erroneous. *Id.* at 1003.

[13] Here, the trial court issued a lengthy and thorough order explaining its decision. A trial court's findings on summary judgment are helpful in clarifying its rationale, but they are not binding on this court on review. *Biedron v. Anonymous Physician 1*, 106 N.E.3d 1079, 1089 (Ind. Ct. App. 2018). We are not constrained to the arguments made to the trial court and we may affirm a grant of summary judgment on any basis supported by the designated evidence. *Id.*

## II. Debris Removal Expenses

[14] We review an insurance policy using the same rules of interpretation applied to other contracts; that is, if the language is clear and unambiguous we will apply the plain and ordinary meaning. *Adkins v. Vigilant Ins. Co.*, 927 N.E.2d 385, 389 (Ind. Ct. App. 2010)*, trans. denied*. An insurance policy is ambiguous if a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Id*. An ambiguity does not exist merely because the parties favor different interpretations, however. *Id*. An insurance contract that is unambiguous must be enforced according to its terms, "even those terms that limit an insurer's liability." *Sheehan Constr. Co. v. Cont'l Cas. Co.*, 935 N.E.2d 160, 169 (Ind. 2010). The power to interpret insurance contracts "does not extend to changing their terms, and we will not give insurance policies an unreasonable construction to provide added coverage." *Adkins*, 927 N.E.2d at 389. In other words, we may not extend coverage beyond that provided by the unambiguous language of the contract. *Sheehan Constr. Co.*, 935 N.E.2d at 169. "[I]nsurers have the right to limit their coverage of risks, and, therefore, their liability by imposing exceptions, conditions, and exclusions." *Id.*

[15] ECM denied the Blinns' debris removal claim "because 1) Blinn failed to submit a written demand for debris removal expenses within 180 days of the Loss pursuant to the Policy; and 2) Blinn could not produce documentation substantiating incurred debris removal expenses." Brief of Appellees at 20. ECM therefore contends the trial court properly granted summary judgment because as a matter of law, the Blinns had not met the policy requirements for

recovering debris removal expenses. The Blinns contend the policy does not specify that *they* must notify ECM of their claim and that ECM knew they were conducting debris removal and incurring debris removal expenses as a result of several communications within 180 days of the fire; therefore, they contend summary judgment was inappropriate because they "report[ed] the existence of debris removal expenses as the contract requires." Brief of Appellants at 16.

[16] With respect to the debris removal expenses claim, the trial court found:

> The policy . . . clearly provides for debris removal coverage, but requires that expenses related to debris removal be 1) reported to ECM, 2) in writing, 3) within 180 days of the loss. The date of loss herein was the date of the fire – June 7, 2011. Significantly, [t]he Blinns had retained counsel within the 180-day limitation period for purposes of securing payment under the policy. The designated evidentiary materials indicate that the first mention of a debris removal claim was on January 23, 2012 in a letter from [t]he Blinns' counsel – 230 days after the loss. That letter did not contain any documentation of expenses . . . . These expenses were incurred in June through December 2011, and thus presumably could have been documented then.
>
> * * *
>
> [T]he policy both conferred its benefits on the Blinns and subjected them to the contractual condition precedent of notice and documentation prior to reimbursement of the expenses. This condition precedent should not have taken them by surprise – the Blinns were represented by counsel. Nonetheless, they failed to timely submit documentation of their expenses. As such, they have not complied with the clear terms of the policy and summary judgment is appropriate.

Appealed Order at 7-9 (footnotes omitted).

[17] The duty to notify an insurance company of potential liability is a condition precedent to the insurer's liability to its insured. *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind. Ct. App. 1993), *trans. denied*. Unlike other policy provisions requiring the cooperation of the insured, noncompliance with notice of claim provisions resulting in an unreasonable delay triggers a presumption of prejudice to the insurer's ability to prepare an adequate defense. *Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind. 1984). The Indiana Supreme Court stated in *Miller*:

> The requirement of prompt notice gives the insurer an
> opportunity to make a timely and adequate investigation of all
> the circumstances surrounding the accident or loss. This
> adequate investigation is often frustrated by a delayed notice.

*Id*.

[18] The debris removal expenses coverage provision in the policy states, "We do not pay any expenses unless they are reported to us in writing within 180 days from the date of direct physical loss to the covered property." App. of Appellants, Vol. 2 at 72. The Blinns interpret this to mean the *existence* of debris removal expenses must be reported within 180 days not the *amount* of debris removal expenses. *See* Br. of Appellants at 15 (noting there were several communications from the Blinns or their agents "which should have sufficed to report the existence of debris expenses"). Thus, they contend Smith's "First Report" to ECM of June 30, 2011, relaying that debris removal had begun, in conjunction with a September 29, 2011 letter from their attorney and their

October 13, 2011 complaint to the Indiana Department of Insurance, was sufficient to give notice to ECM that the Blinns were incurring debris removal expenses. The Blinns also contend the estimate from Martin Enterprises in July 2011 and the estimate from Hile Construction which included line items for debris removal expenses "reported" the Blinns' debris removal expenses within 180 days.

[19] We agree the policy does not specifically state notice of a debris removal claim must be made by the insured (although it stands to reason that only the insured could give notice that it intended to pursue such a claim). If the requirement of the policy was that ECM be notified debris removal expenses were being incurred, perhaps the "notice" ECM received from sources other than the Blinns would suffice. However, we need not decide *who* must make the report, because the provision also states *what* must be in the report. The policy requires that any expenses the insured intends for the insurer to pay must be reported in writing within 180 days; meaning, the actual expenses the insured wants reimbursed must be reported within that time frame. Estimates would not be sufficient to meet this requirement. And on this matter, it is undisputed that the Blinns did not provide any documentation of their alleged actual expenses for debris removal until at least April of 2012, well past the 180 days allowed by the policy and past the point at which debris removal had given way to repair work. *See* App. of Appellants, Vol. 2 at 209 (Edward Blinn's affidavit stating, "We had submitted two groups of debris removal expense documents – one set on April 27, 2012, and the other set on June 8, 2012."); *id.* at 218 (Edward Blinn's

affidavit stating, "The work done at the Building was exclusively debris removal during the first few months after the Fire; there was no work done to repair damage until November 2011[.]"). Therefore, the trial court did not err in granting summary judgment to ECM on this claim because the Blinns did not provide ECM with documentation supporting their claim within the timeframe required by the unambiguous terms of the policy.[10]

# III. Bad Faith Claim

[20] With respect to the Blinns' bad faith claim, the trial court found:

> [T]o overcome summary judgment, the Blinns must provide some evidence whereby the trier of fact could infer conscious wrongdoing or other state of mind reflecting dishonest purposes, moral obliquity, furtive design, or ill will.
>
> The Blinns have failed to carry that burden. [They allege] bad faith occurred due to 1) ECM's handling of the building coverage claim; and 2) ECM's handling of the debris removal claim. The second issue relating to the debris removal claim has been resolved above – ECM was entitled to receive some documentation of debris removal before tendering payment under the policy. It did not receive such documentation in a timely manner. ECM was entitled to insist that the Blinns follow

---

[10] Because the Blinns did not timely report their expenses, we need not delve into the disagreement between the parties about what constitutes "debris removal." Also, because the onus was on the Blinns to report the expenses they wanted to be covered, *see Ellison v. Town of Yorktown*, 47 N.E.3d 610, 617 (Ind. Ct. App. 2015), we reject their claim that ECM is estopped from denying coverage because it did not request documentation of debris removal expenses until after the 180 days had passed.

the dictates of the policy. In doing so, it was not acting in bad faith.

As to the building coverage claim, ECM extended two advance payments totaling $300,000 before receiving any documentation of the property's ACV. They then agreed to a process of swapping appraisals and ECM tendered the final advance payment to the Blinns . . . three weeks after the exchange of appraisals. Finally, the parties participated in the appraisal process outlined in the policy, which essentially confirmed ECM's valuation. As to delay in this process, it should be noted that the Blinns did not deliver an appraisal to ECM until March 2012, nine months after the loss. [They] can hardly complain now about a delay in settlement of the ACV claim.

The designated evidentiary materials fail to demonstrate any evidence of bad faith on the part of ECM. . . . [T]he insurer's obligations include refraining from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising an unfair advantage to pressure an insured into settlement of his claim. None of these misdeeds are present here. Even if the judgment of ECM could be questioned in the adjustment process here, poor judgment or negligence do not constitute bad faith. Summary judgment is appropriate on the Blinns, [sic] bad faith claim.

Appealed Order on Summary Judgment at 10-11 (citations omitted).

## A. Motion to Compel

The Blinns contend that the trial court abused its discretion in denying their motion to compel ECM to comply with certain discovery requests. We address this issue first because the Blinns contend summary judgment on their bad faith

claim was improperly granted in part because the failure to grant the motion to compel "allowed [ECM] to shield much of its claims process from its insured as otherwise discoverable work and communications normally done by an adjuster were instead deemed privileged[.]" Br. of Appellants at 27.

[22] A trial court has broad discretion in ruling upon discovery matters, and we will reverse such rulings only when there has been a clear abuse of discretion. *Himsel v. Indiana Pork Producers Ass'n*, 95 N.E.3d 101, 109 (Ind. Ct. App. 2018). An abuse of discretion occurs if a decision is clearly against the logic and effect of the facts and circumstances before the court or if the trial court has misinterpreted the law. *Wright v. Miller*, 989 N.E.2d 324, 330 (Ind. 2013). There is a presumption that a trial court will act fairly and equitably in each case before it. *Id.* "Because of the fact-sensitive nature of discovery issues, a trial court's ruling is cloaked with a strong presumption of correctness." *Davidson v. Perron*, 756 N.E.2d 1007, 1012 (Ind. Ct. App. 2001), *trans. denied*.

[23] The attorney-client privilege protects against judicially compelled disclosure of confidential information. *Hartford Fin. Servs. Grp., Inc. v. Lake Cty. Park & Recreation Bd.*, 717 N.E.2d 1232, 1235 (Ind. Ct. App. 1999); *see also* Ind. Code § 34-46-3-1(1). As noted above, *see supra* ¶ 8, the trial court found that ECM had asserted "a valid claim of privilege regarding the documents and information not disclosed in discovery." Appealed Order on Motion to Compel at 3. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action . . . ." Ind. Trial Rule 26(B)(1). "A simple assertion that an insured cannot . . . prove a case of

bad faith [without disclosure of privileged information] does not automatically permit an insured to rummage through the insurers' claims file." *Hartford*, 717 N.E.2d at 1237.

[24] ECM retained counsel on October 31, 2011. ECM's counsel, Mark Ulmschneider, averred in an affidavit submitted in response to the Blinns' motion to compel that neither he nor any other attorney in his firm "adjusted the fire loss claim asserted by [the Blinns] against ECM or determined whether to accept or deny coverage for [their] claim." Appellee's App., Vol. IV at 173 ¶ 4. Instead, the attorney's role "was limited to securing the necessary information and documentation in order for ECM to determine whether to accept or deny coverage . . . ." *Id.* at ¶ 5. Despite the Blinns' bald assertions, there is no evidence that Ulmschneider or any other attorney served ECM in the capacity of an adjuster. In fact, by the time ECM hired counsel, the Blinns had already had counsel for several months and had initiated a complaint against ECM with the Indiana Department of Insurance. The work product privilege specifically precludes discovery of materials prepared in anticipation of litigation or for trial unless the party seeking discovery has a substantial need for the materials and is unable without undue hardship to obtain the substantial equivalent of the materials by any other means. T.R. 26(B)(3). The work product privilege is asserted on a document by document basis. ECM's counsel compiled a privilege log, and the trial court ordered it to supplement its "somewhat cryptic" log and allowed the parties the opportunity to bring the issue back to the court for another hearing. *See* Appealed Order on Motion to

Compel at 3. ECM supplemented its log and the Blinns did not contest the issue further.

[25] Under these circumstances, we conclude the trial court did not abuse its discretion in denying the Blinns' motion to compel.

## B. Bad Faith by ECM

[26] Finally, the Blinns contend there is a genuine issue of material fact regarding whether ECM acted in bad faith in refusing to pay debris removal expenses, delaying payment for the Building Property Coverage, and deceiving the Blinns as to their obligations under the contract.

[27] Insurers are obligated to exercise good faith in determining whether to pay an insured's claim. *Earl v. State Farm Mut. Auto. Ins. Co.*, 91 N.E.3d 1066, 1076 (Ind. Ct. App. 2018), *trans. denied*. The obligation of good faith includes the obligation to refrain from making an unfounded refusal to pay policy proceeds; causing an unfounded delay in making payment; deceiving the insured; or exercising an unfair advantage in order to pressure an insured into settling a claim. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). To prove bad faith, the insured must establish by clear and convincing evidence that the insurer had knowledge that there was no legitimate basis for denying liability. *Missler v. State Farm Ins. Co.*, 41 N.E.3d 297, 302 (Ind. Ct. App. 2015). "Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present." *Id.* (quoting *Colley v. Ind. Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998), *trans. denied*). "A

finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Colley*, 691 N.E.2d at 1261.

[28] As for ECM's denial of the Blinns' claim for debris removal expenses, we have already determined above that ECM's refusal to pay that claim was grounded in the Blinns' failure to meet their obligations under the policy and it was therefore not an unfounded refusal to pay. The Blinns also contend that ECM acted in bad faith by not immediately making an advance payment when it was informed by its adjuster within a month of the fire that the building was a total loss. Instead, ECM made its first payment of 10% of the policy limits four months after the fire and paid what would ultimately be the full amount of the claim nine months after the fire. The Blinns contend this was an unfounded delay in making payment.

[29] The Blinns' policy provided that in case of loss, they were required to send to ECM proof of loss, including detailed estimates for repair or replacement, within sixty days. *See* App. of Appellants, Vol. 2 at 75. They were also required to produce records relating to value, loss, and expenses as often as reasonably requested. *See id.* A covered loss is payable thirty days "after a satisfactory proof of loss is received" *and* the amount of the loss has been agreed to in writing, an appraisal award is filed, or a final judgment is entered. *Id.* at 78. Here, in a letter dated January 23, 2012, the Blinns' counsel informed ECM's counsel that Edward did not believe "it would be prudent to make a demand until he knows how the property has appraised." Appellees' App., Vol. IV at 67. The letter also informed ECM that the Blinns had engaged an

appraiser but "[i]t is unclear how long it might take before we have our own appraisal[.]" *Id.* Ultimately, the parties agreed to a simultaneous exchange of appraisals, which occurred in March 2012. At this point, ECM had made two advance payments to the Blinns' totaling $300,000.[11] The parties' appraisals differed by approximately $400,000 and they were unable to agree to a valuation, so the matter was submitted to the appraisal process provided in the policy. Nonetheless, ECM tendered an additional $442,500 to the Blinns in March 2012 to make the total advance payments equal to the amount of ECM's appraisal, pending the outcome of the appraisal process. The umpire did not issue its opinion on the ACV of the property until April 11, 2014, adopting ECM's valuation. Therefore, the Blinns had received the full amount of the ACV two years previously. Given the Blinns' obligations under the contract, the procedure the parties agreed to in order to settle the ACV, and given that the full amount of the ACV was paid two years before the ACV was finally determined, the designated evidence shows that ECM did *not* cause an unfounded delay in payment, even when it did not make its first payment to the Blinns until four months after the fire.

[30]    Finally, the Blinns contend ECM "deceived" them by requesting documentation unrelated to the requirements of the policy, primarily with

---

[11] To the extent the Blinns complain about the *amount* of the advance payments, the January 23, 2012 letter from their counsel advised ECM that "[a]n additional $200,000 would cover [the Blinns'] operating shortfall into this coming Spring[.]" Appellee's App., Vol. IV at 68. That is the amount of the second advance payment ECM made in February 2012.

respect to the debris removal expense claim. Br. of Appellants at 23. It is unclear what "deception" the Blinns contend was afoot. It is possible the Blinns are asserting they were "deceived" because continued requests for documentation led them to believe they would receive payment under the provision. The Blinns' obligations are set forth plainly in the policy and it was incumbent upon them to be aware of and meet those obligations without expecting ECM to prompt them. Nonetheless, the document requests gave the Blinns the opportunity to substantiate their claim by submitting documents ECM believed would assist in determining the appropriate amount, if any, payable under the debris removal expense provision. That the Blinns were unable to produce the requested documentation is not evidence of bad faith by ECM.

[31] Insurance companies may, in good faith, dispute claims. *Erie Ins. Co.*, 622 N.E.2d at 520. "[A] good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all" does not breach the obligation to deal in good faith. *Id.* We conclude, based on the designated evidence, that there is no genuine issue of material fact as to whether ECM acted in bad faith in dealing with the Blinns' claim. The trial court properly granted summary judgment to ECM on the bad faith claim.

# Conclusion

[32] There is no genuine issue of material fact to be decided by the fact-finder as to either of the Blinns' claims and therefore, the trial court properly granted

summary judgment to ECM and did not abuse its discretion in denying the motion to correct error. The judgment of the trial court is affirmed.

[33] Affirmed.

Baker, J., and May, J., concur.